We will begin by calling the first case we have scheduled for oral argument. Case number 14-3606, Chang-Mu v. Chang-Liu. If both attorneys that are going to present oral arguments today would step up to the podium and please identify yourselves for the record. Michelle Lagrada on behalf of the plaintiff, Chang-Mu. Good morning. Dan Liu on behalf of the defendants and appellees. All right. May I ask you, both of you, to try to speak up when you present. I even did not get the names. Is it Ms. Lagrada? Yes. Am I pronouncing your name right? Yes, Lagrada. Lagrada, okay. And Mr. Liu. Liu, yes. All right. Good morning. I would like to let both of you know that each side will have approximately 15 minutes to present oral argument. And from that, Ms. Lagrada, you will have some time for rebuttal. All right? Yes. So with that, Mr. Liu, you may be seated. Lagrada, you may proceed. May it please the Court, Michelle Lagrada on behalf of the plaintiff appellant, Chang-Mu. Mr. Moon appeals the decision of the trial court, which dismissed his first amended complaint, which is pursuant to a 2615 motion to dismiss. The first amended complaint involved three counts. The first count was for defamation. The second count for false light invasion of privacy. And the third count was for intentional infliction of emotional distress. With respect to the defamation count, Mr. Moon sufficiently alleged all elements of that count. First, the statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with that person. Furthermore, with respect to defamation, there are two types of defamation, as the Court is aware. One is defamation per se and defamation per quad. And this is only per quad that you're addressing? Correct. Yes, Your Honor. And it's only one statement, is it not? Correct, Your Honor. It's with regard to there was a petition that was made within Mr. Moon's church, and that church sought discipline. And within that petition, the discipline was sought in part on a statement regarding Mr. Moon going for, had been trying or was attempting to try to inform the FBI or the IRS about the various members' donations. And wasn't it specifically the IRS? Yes, it was the IRS, Your Honor. I don't recall anything about the FBI in the complaint. Correct. It was the IRS. I apologize. All right. And with respect to that memorandum, Mr. Moon was defamed from the sense that he felt that this lowered his view, his standard in the community. It brought shame to him within his community. As in many communities, many people don't view favorably involvement with the federal government. And with respect to the church members' dealings, it further brought shame to him. And his wife also sought a divorce from him, which is where he is seeking his special damages. Counsel, can you speak with respect to those special damages? Yes. Those special damages with respect to pecuniary damages, the damages that he alleged were damages related to attorney's fees and costs associated from the divorce. And the divorce he alleged in his complaint was approximately caused by this petition and the defamatory allegations that he had gone ahead and was going to verbally report the details of the church members' offerings to the IRS. That's a question I have. And that is, in her petition for dissolution, which is included in the record, there's no mention in that petition regarding this particular statement that you're challenging as the defamatory remarks. There's nothing in the petition that suggests anything about these particular remarks that his notifying or communicating with the IRS regarding church members' offerings is in the petition. So how do we get from that particular statement and say that the damages, which are the attorney fees, from that dissolution matter relate back to the per quad? The petition, yes, is some level of evidence of whether or not the divorce was caused by the report, that defamatory statement. However, Mr. Moon's first amended complaint alleges that this disciplinary authority, that the false statement that was made was in part what caused the divorce. While the petition itself may not specifically reflect that one particular statement, Mr. Moon alleges in his first amended complaint that the false statement and that his wife's learning about this is in part what caused the divorce. But it's only partially what is alleged to have caused the divorce. So there are other matters that we won't bother to speculate about which might have caused the separation of the divorce. But you're seeking damages based on the memorandum, the petition in the church. Mr. Moon's complaint does allege, though, that it is one of the proximate causes of the divorce. And so he would – Well, you attached the complaint itself to your complaint, the petition for dissolution to your complaint. And the wife herself says this is what caused it. It's the dissension in the church. It had nothing to do with the IRS report. But it's her husband's disagreement with the church and borrowing money in other instances. And she does not say that the report about reporting other members of the IRS had anything at all to do with the petition, why she filed it. And she set forth why. And you attached that to your petition. And shouldn't we say, okay, let's look at this? And there's no way in there does she say that divorce was caused by this allegation. The petition for dissolution was attached to the verified complaint. It wasn't attached to the First Amendment complaint that was the subject of the First Amendment complaint. But I am aware that it is part of the record. And with respect to the petition for dissolution, the petition does refer, though, to the action of the church taking action against Mr. Moon. And while it does not specifically reference the statement about the IRS, Mr. Moon, in his allegations of the First Amendment complaint, established sufficient allegations to move forward on this complaint. It may ultimately be, you know, in a summary judgment or at trial that someone will, the trier of fact decides that it was not, in fact, approximate cause of the divorce or the damages are not approximate cause. Why does the complaint in itself have to state that the statement, the actual statement, the only one that you are complaining of, was the approximate cause of the pecuniary damages? The complaint should allege that the damatory statement is approximate cause of the damages. And I believe that the First Amendment complaint does sufficiently state that. Well, all right. Let me ask you this about pecuniary damages. You are alleging that the only pecuniary damages are these attorney fees related to the divorce action. Correct. There isn't any other. In the First Amendment complaint, that's what was alleged, Your Honor, is those damages. Now, let's move on to your second false light complaint, the count of your complaint. How would you describe the nature of a false light complaint? The nature of a false light complaint, it is similar to a defamation claim. In fact, they often say that all defamation cases are false light cases, but not all false light are defamation cases. Correct. So in that regard, this is based on publication of the statement, placing Mr. Moon in a false light. And as the Court is aware, there are three different elements of a false light claim, including that the plaintiff was placed in a false light before the public as a result of the defendant's action, that the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and that knowledge of the falsity of the publication or that the defendant acted in reckless disregard of the truth, which the case is referred to as actual malice. There is a reasonableness test as part of the false light, and that is as set forth in Lovegren, and the element of reasonableness is met when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. In this case, Mr. Moon, this kind of limited the steer not to a reasonable person, but to a reasonable person that's a member of this particular Korean community church? There is limitation, however, Your Honor. The mere limit, it's still a reasonable test. So in this, as Lovegren set forth, it's whether the defendant knows that the plaintiff, as a reasonable person, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. Is this a community issue, or is it a limited world within this Korean Presbyterian church? Extended further than just his church, as was indicated in the First Amendment complaint, there was allegations that his wife's church, members of the wife's church, had been aware of this memorandum and the allegations within the memorandum. So it extends beyond just his particular church. However, it's still reasonable for him to have been offended by this statement, even beyond just the church. There are plenty of situations where someone would be justified in feeling offended or aggrieved by the publicity, such as that other persons might not understand. For instance, an attorney being threatened with an ARDC complaint may feel aggrieved and justified that another member outside of the attorney community would not understand or necessarily be offended in the same way. But it is still something where that particular person would be justified in feeling aggrieved. Here, Mr. Moon, likewise, and this isn't even limited to the Korean community. The complaint bases the damages on what occurred within the church, not to a reasonable person, but to a person within the Korean Presbyterian church. Correct. And that is what the First Amendment complaint did. We are here before a 2615 motion, and so for a dismissal to be proper, it has to be that no other facts could be alleged which would grant relief. And it's possible that with an amendment of the complaint, Mr. Moon could correct the limitation that it's within the Korean church. Did you ask for an amendment? He previously had asked for an amendment between the original complaint and the First Amendment complaint. The First Amendment complaint, was there a request to re-plead? I do not believe that he requested. Just one moment, Your Honor. Certainly. Okay. He did not. As part of his relief that he sought in response to the motion to dismiss, he solely sought to deny the motion to dismiss. I'm sorry, go ahead. With respect to your false light claim, the third element about which you speak is actual malice. Correct. Is that anywhere pled? Yes, it is pled within, if you go to page, it's C00137, and it would be under paragraph 29. If the defendant acted with actual malice, they knew the statement was false when they published it, or at the very least acted with reckless disregard for its truth or falsity. Now, on a motion to dismiss, we always accept all well-pled facts. And we actually accept conclusions that are based upon well-pled facts. Aren't these simply conclusions regarding malice and regarding that they made these statements when they knew they were false? There's no particular description. I mean, there is the petition that was filed within the church, but aren't these really conclusions regarding malice without supporting fact? That particular statement would be a conclusion. However, in reviewing all of the allegations of the First Amendment complaint, the allegations would lead to an inference that those back it up. For instance, one of the allegations in that, which is C00135, paragraph 15, refers to how in the community there are many legal and illegal immigrants. In the greater Korean community, the members of the community understand that it's generally necessary to avoid involvement with the federal government. The false statement suggests, though, that he's willing to report members. Furthermore, so it shows that- I'm not sure how that gets us to actual malice, though. Some recognition or acknowledgment as to how an individual's statements with respect to a relationship with the IRS might be perceived. How does that- So that statement, along with other statements, would go to show that knowing that these type of statements have an effect on a person's perception in the community and then making those statements knowing that it would have the potential ramifications could go to show that-or would back up that there was knowledge or a disregard for whether or not the falsity of the statement. As Justice McBride, I think, indicated, you've kind of limited the sphere to now the Korean community. Is that right? Because who else would know that? With respect to which part? With respect to persons knowing that making statements to the IRS would be problematic or would be perceived as some dishonorable act. Who knows that? There are certainly many communities beyond just the Korean community and it might not-that do view tattling or otherwise informing on persons that they would view that as something dishonorable. Maybe not every community, but there are many communities out there that do view such actions as dishonorable and otherwise. If we assume that the behavior is offensive, the law requires that it be highly offensive. And does this conduct meet the definition of highly offensive? Yes. In this case, they were seeking to discipline Mr. Moon within his religious community. Some people might akin that to a level of, not necessarily in this case, but excommunication. Many people would find taking those steps towards something similar, being disciplined within your religious community, is highly offensive. When we're judging highly offensive, are we really talking about his conduct of alleged threat to report people as being highly offensive and not the procedure but his threat to report to the IRS? Does that meet the test of highly offensive? Mr. Moon found that it is highly offensive. And those persons who do see, you know, involvement with authorities or over-involvement with authorities or, you know, as I indicated, being a snitch, may find that highly, do find it highly offensive to be referred to that in the community. Let's talk about your last count, the intentional infliction of emotional distress. Perhaps the most difficult tort to allege, certainly. Would you agree? It is very difficult. You believe you've met the bar. As far as putting forth allegations, Mr. Moon set forth sufficient allegations. Whether or not Mr. Moon one day will be able to prevail is not the issue before the court, but whether or not Mr. Moon should survive a 2615 motion to dismiss for the basis of having pleaded with sufficient facts. In this case, Mr. Moon did set forth the necessary elements and that would be found on C00137 to C00138. So some of the allegations that he indicated was that, as indicated before, that the extreme and outrageous nature of the defendant's conduct is exacerbated by their position of authority over Mr. Moon, that the members were ostensibly complaining to a church disciplinary authority to Mr. Moon, and that because of this religious-affiliated nature of this memorandum, it gave a sense of inherent credibility and authority over Mr. Moon, and that there's a perception that the defendants had the ability to affect Mr. Moon's interest by publishing the memorandum, and they did affect it. For most of the pleading in count three, I would suggest are conclusory allegations. But give us a case, compare these allegations, or give us a case that you think best supports that this conduct supports your complaint, intentional infliction of emotional distress. With respect to, in this case, there would be, I mean, typically intentional infliction of emotional distress is on a case-by-case basis, and the facts here would, you know, meet the sufficient allegation, or meet the pleading requirements, as I indicated, whether or not a trier of fact or a motion for summary judgment. Is a false statement always extreme and outrageous? No, a false statement would not necessarily be extreme and outrageous. It would depend on the content of that false statement. But the statement here, and the only one that you are alleging forms the basis of the complaint, is the statement that he, that the allegation was that he was reporting offerings of church members to the IRS, correct? That is the statement, yes. And so, even though it's not per se, we have to get through all these other facts to try to reach the notion that it's somehow defamatory. How does that show or demonstrate or plead any facts that that is the kind of case that the Supreme Court and the other cases suggest amounts to intentional infliction of emotional distress? Well, in this case, it wasn't. The intentional infliction of emotional distress is simply limited to a defamatory statement, but also the nature of the disciplinary proceedings that are associated with that defamatory statement, in that it was the statement that the conduct, so there's the defamatory statement, but the conduct also includes that it's a petition within the religious community, and it was presented to the entire community in alleging this. With respect to how it lowered the community's perception, it caused problems within his relationship, it brings within the Korean community shame upon his children. But those things generally, damage to a reputation, would not amount to intentional infliction of emotional distress. I mean, is there any case that you can point us to that would suggest that when someone's reputation is tarnished within a community, that that amounts to, that's an allegation supportive of an intentional infliction of emotional distress? No, but Mr. Moon did, it did plead in paragraph 36, there is the conclusion of defendant's conduct that caused, actually caused Moon severe emotional stress, but he went on and explained, aside from the devastating loss of his spouse's love, affection, and companionship. Did he seek some kind of treatment for his emotional distress? It is not alleged in the first amendment complaint that he did, no. He simply alleged that he's plagued with perpetual emotional trauma, knowing that a false perception created by defendants about him, and the Korean culture dictates that his children must also suffer as well. So there is no allegation that he sought treatment. But the conduct does have to be extreme and outrageous. Correct. And the allegations have to indicate that that conduct is extreme and outrageous. Well, we're going to have to hear from Mr. Lee now, so we will permit you some time and brief rebuttal. All right. Thank you. Mr. Lee, good morning. Good morning. This whole complaint boils down to one statement, which was included in a petition submitted in the church context. That statement is set forth in paragraph 7 of the first amendment complaint, quote, Threatening Beverly, report the details of a church member's offering to IRS. That's it. That statement was included in the petition, once again, submitted in the church context. Now, from that statement, plaintiff alleges that his wife filed divorce proceedings. In other words, but for that statement, she would not have filed the proceedings to sever the relationship. If you look at the petition, paragraph 5, there's reasons why she is alleging that their relationship is no longer reconcilable. In that paragraph, there's no reference whatsoever to the petition nor that particular statement. How is there a reference to? I'm sorry? What does she reference? She doesn't reference the petition and she doesn't reference the statement. What does she reference in her petition for dissolution? Yes, Your Honor. She said the respondent, Mr. Moon, had issues with the church. Many members of the church appeared to a higher level of the church complaining of Mr. Moon's behavior. Further, the pastor said Mr. Moon made false statements to a higher level of the church. Some elders also accused Mr. Moon of seeking to borrow money from them. Mr. Moon denies this, but the petitioner lost trust and respect for her husband and vice versa, causing irreconcilable differences. That's what she's alleging in her petition. Once again, no reference to that particular statement, upon which they're alleging defamation per quote. Now, going to sum up all the other allegations about the Korean community, being a Korean descendant and also being Presbyterian, I don't know how they got the information. Somehow, the Korean community is less than a general community. Are we asking the court, somehow, when we look at each specific ethnic community, you need to apply different standards for defamation? Well, in this particular case, aren't those allegations going to the per-quote count? Because there has to be extrinsic evidence pled to show why the particular statement about reporting offerings to the IRS is defamatory in this particular case. So don't those allegations suggest that's the reason why the statement is defamation? Because there's other factors at play here within a particular community? Yes, Your Honor, that's correct. However, within the 2615 motion, we need to accept well-planned facts, not speculation, assumption, or presumption. Section 2-6058 states that, quote, Verified allegations do not constitute evidence except by way of admission. What they're alleging is just conclusions, no facts, not admission. It's not based on some data. Somehow, they put every possible allegation based on speculation and uncertainty, saying that somehow the Korean community is less than other communities. If that's the case, the court will be required to apply different standards for every different ethnic community in the state. Is that what's wrong with the false light count? That it focuses on this Korean Presbyterian community church as opposed to what a reasonable person would be offended by? Yes, Your Honor, I 100% agree. It must be highly offensive to a reasonable person, not a specific community. There's no case law to support that. Well, going back to the per-quad count, would you agree that generally in a defamation case that normally whether a statement is defamatory, and I don't mean a per se statement, but when a statement has to be explained by extrinsic evidence, that normally that would be a question that a jury would decide? But somehow, but they still must allege in the complaint. Your Honor, they're asking whether they are given a leave to amend the complaint. We filed a 2615 and 2619 motion to dismiss the complaint. And then the one motion was fully briefed before the hearing. The counsel back then asked the court to amend the complaint. That's why they amended the first amended complaint. But once again, the first amended complaint doesn't show any facts to support defamation per-quad at this point. And how do you respond to the damages where counsel is suggesting that the divorce was causally related to these statements or perhaps all of what was going on within the church as a result of comments that he claims are false in the petition? The damage is based on the causation at this point. Once again, they must show, they must apply that. The divorce proceeding would not have occurred before the petition, in particular the statement. There's no reference to the statement. With respect to direct and proximate causation at this point, even assuming that somehow Mr. Smith filed a divorce because of this specific statement, there's no case law to support that. The attorneys' fees in his divorce proceeding is the particular specific damage for defamation per-quad. But isn't there case law that suggests you can connect or you can use attorney fees as pecuniary damages if the attorney fees are a result of the defamatory statement, even though they came from a different proceeding? Yes, Your Honor. There are two cases. The one case, I believe, Minnesota case. The second case, Lou v. Christopher Holmes, LSA, is a Nevada case. It's not binding and controlling upon this court. That case concerns the defamation per-quad. So that's a title action. I don't know how that case supports their contention that somehow the attorney fees allegedly resulting from the divorce proceeding somehow constitutes special damage defamation per-quad in this state. Finally, with respect to intentional infriction of emotional distress, Your Honor, the court is correct. The government, they must assure that the conduct alleged must be extreme and outrageous. Well, we're not really looking at what the trial judge did in this case because we're reviewing it de novo or anew. But what did the trial judge, what was his ruling in regards to the last count, the intentional infliction of emotional distress? Did he also find that the pleadings were not sufficiently outrageous to warrant that that count go forward? Yes, Your Honor. The trial court found that, quote, the publication of a petition to the church hierarchy is not extreme and outrageous conduct. And he has now pled facts to support allegations of severe emotional distress, end quote. Mr. Lee, if I may, if the pleadings did support the idea that his wife of 40 years divorced him as a result of the statements, the false statements, and everything else that was going on within the church because of this petition, do you think that would amount to intentional infliction of emotional distress? Or could it? No, Your Honor. Once again, the fact that somehow the church members submitted a petition to the church hierarchy system, that is not extreme and outrageous conduct. They did that so because they're given such a right to do so within the church system. What about the pleadings that the children of Mr. Moon are dishonored? That type of allegation, wouldn't you suggest that that allegation has some basis in fact, that if a parent is dishonored that the children are also considered dishonored as a result of something that the father or mother did? So combining that with the divorce action, is there something here that might, at least at the pleading stage, suggest intentional infliction of emotional distress? Only if that conduct alleged is extremely outrageous. Assuming that somehow, after 40 years of marriage, assume that their children are no longer in their 20s and teens or high school and junior high. They must be all grown up kids. They're alleging that Mr. Moon's, quote unquote, fear of their kids being perceived dishonorable. Fear is not damage for intentional infliction of emotional distress. Being perceived, the perception is not the damage. But once again, Your Honor, even if the petition is extremely outrageous conduct, Mr. Moon's fear of their kids being dishonorable or being perceived dishonorable, that's not damage. It's not going beyond all possible bounds of decency. That's really kind of the standard. It has to be so outrageous in character and so extreme in degree as to go beyond all bounds of decency. I don't think so, Your Honor. If that's the case, the state court will be floored with the cases. Whenever someone files a petition or disciplinary action in a church context, even being excommunicated, they don't come to court. Your Honor, I've been defamed. I suffer emotional distress because I've been excommunicated. Someone filed a complaint against me in a church context or a disciplinary context. Your Honor, that is not extremely outrageous conduct based on case law. Anything further at this time, Mr. Lee? No, Your Honor. All right. Thank you. Ms. Labrada, you may have a few moments to respond. What could be more extreme and outrageous than being shunned by your church and by your family? In this case, it was extreme and outrageous conduct for them to, for the, that Mr. Moon alleged where they proceeded with the petition on the basis of false allegations. Mr. Moon has now, suffering from their conduct in which he's, his wife has sought a divorce, in which the statements regarding the IRS have now made it such that people no longer want to associate with him. Are you familiar with this Tabora versus the Gottlieb Memorial Hospital? I'm talking now about intentional inflictions of emotional distress. In that case, there was an affirmance of a dismissal over the plaintiff doctor's allegations that the defendant engaged in a five-year campaign, a five-year campaign of harassment and intimidation by falsely claiming the doctor was incompetent. His privileges were revoked and he was constantly berated in front of the hospital staff. In that case, the appellate court affirmed the dismissal based on those allegations. How would you distinguish that? In this case, Your Honor, this involves an action that, you know, to some people would be akin to an excommunication from a church. In that, in Mr. Moon's church, religion is very important and belonging to a religious society is extremely important and to have disciplinary steps taken against you in such an important realm would be, you know, extreme and outrageous conduct. This is that type of discipline or reprimand, if you will, a part of most religious doctrine? Is there excommunication available in the Catholic church? Is there reprimand available in the Baptist church? I mean, is there some means by which the leadership in church communities hold those in, well, he was a deacon, hold those in those types of positions accountable? I cannot speak to every religion. I believe many religions have some form of discipline. In this particular case, they had these options to do petitions. So just getting back to Mr. Lee's point, if this is problematic in the Korean church, should we then anticipate that it would be problematic and subject to complaint, or lawsuits being brought in other types of religious communities where the same or similar conduct occurs? Well, I believe what also makes this particular instance extreme and outrageous is that it was based on information that was not true. I would not expect for lawsuits to be filed any time disciplinary proceedings were instituted against a member of another church. But if those proceedings are instituted on false information, it may be something that would warrant the court's attention, given the importance that many people place on religion and being a part of a religious society. What makes it extreme and outrageous is the fact that it would be based on false information and not just information that otherwise may deem disciplinary proceedings necessary within a particular religion. Anything else before you conclude? The lower court dismissed this with prejudice at the pleading stage. Mr. Moon satisfied the pleading requirements and should be given the opportunity to establish the evidence necessary to move forward with this complaint, whether going forward to a motion for summary judgment or to trial. And therefore, we would request that the dismissal order be reversed in this matter. Was there a request to replete after the amended complaint was dismissed? Yes, there would be a request in addition to amend the complaint to meet any of the requirements. I mean, it was there at the trial court? Oh, it was there, not in the response brief that Mr. Moon's attorney had filed, no. All right. Any further questions by? Okay. All right. We will take the matter under advisement. We thank both the attorneys for your presentation today. Thank you. We're going to take a short recess, and then we have another case that we will be calling in a few minutes.